# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

| | |
|---|---|
| LINETTE ROSS,<br><br>        Plaintiff,<br><br>v.<br><br>VAKULSKAS LAW FIRM, PC, and<br>NEIMAN, STONE AND MCCORMICK,<br>and RF FINANCIAL, LP,<br><br>        Defendants. | **No. 10-CV-4100-DEO**<br><br>**Memorandum and Opinion Order** |

———————————————

This matter is before the Court on Defendants' Motion for Summary Judgment against Plaintiff's Complaint alleging violations of the Federal Debt Collection Practices Act (hereinafter "FDCPA"), Iowa Debt Collection Practices Act (hereinafter "IDCPA"), and common law abuse of process. Docket No. 2 and Docket No. 10.

## I.  FACTS

On November 20, 2007, Defendant, RF Financial LP (hereinafter "RF Financial"), filed a lawsuit in Woodbury County Small Claims Court against Plaintiff for amounts allegedly owed on a delinquent credit card.  Docket No. 10-3, 1.  Prior to this action, RF Financial failed to file notification with the Iowa Attorney General identifying itself

as a debt collector in violation of law.  Docket No. 14-1, 5.
In the Small Claims Court proceedings, Defendant, Neiman,
Stone, and McCormick Law Firm, represented RF Financial.
Docket No. 10-3, 1.  Plaintiff initially contested the debt,
but, in a deposition, has since admitted to its legitamacy.
Docket No. 10-3, 2-3 (citing Docket No. 10-4, 7-8).  On
January 22, 2008, the Woodbury County District Small Claims
Court entered a judgment against Plaintiff in the amount of
$3,484.20, plus 16.8% interest.  Docket No. 10-3, 2.

After the judgment, and pursuant to Iowa Code Section
626.1, the Woodbury County Clerk of Court issued an execution
which was returned unsatisfied.  Docket No. 10-3, 3.
Thereafter, RF Financial filed an application for Plaintiff to
appear for a Judgment Debtor's Exam pursuant to Iowa Code
Section 630.1.  Docket No. 10-3, 3.  On September 10, 2010,
the Honorable Judge Tott of the Woodbury County District Court
set the Debtor's Exam for October 26, 2009.  Docket No. 10-3,
4.

On behalf of RF Financial, Defendant Neiman, Stone, and
McCormick Law Firm hired process server Ellen Vakulskas to
serve Plaintiff with the Order to Appear.  Docket No. 10-3, 4.

2

On September 22, 2009, at 4:35 p.m., process server Vakulskas
contends she personally served Plaintiff at Plaintiff's
residence, 1287 Carroll Avenue, Lawton, Iowa.  Docket No. 10-
3, 4.  Process server Vakulskas testified in a deposition that
she specifically remembered serving Plaintiff because
Plaintiff lived in a rural area and her house was difficult to
find.  Docket No. 10-3.  On the same day process server
Vakulskas contends she served Plaintiff, she completed an
Affidavit of Service swearing that she served the Order of
Appearance on Plaintiff personally.  Docket No. 10-4.  The
Affidavit mistakenly notes that Plaintiff was served at 1287
Carroll Avenue, Sioux City, Iowa, rather than Lawton, Iowa.[1]
Docket No. 10-4, 17.  Plaintiff insists that she never
received the Order to Appear, and the affidavit of service is
false.  Docket No. 14-1, 4.  She contends she was visiting her
hospitalized son at the time of the alleged service.  Docket
No. 14-1, 4.

---

[1]     Defendants contend process server "Vakulskas
inadvertently stated Ross's residential address as 1287
Carroll Avenue, Sioux City, Iowa . . . due to an automatic
response on the computer program used to draft Affidavits of
Service that defaults back to 'Sioux City' unless changed."
Docket No. 10-3, 5.

In any event, Plaintiff failed to appear at the Debtor's Exam on October 26, 2010. Docket No. 10-3, 6. On January 13, 2010, Niemann, Stone, and McCormick Law Firm filed an Application for a Civil Warrant pursuant to Iowa Code Section 630.11. Docket No. 10-3, 6. The Application did not request bond to be set at a certain amount. Docket No. 10-3, 6 and Docket No. 10-4, 22. On January 14, 2010, Judge Tott issued an Order for Civil Warrant for Plaintiff. Docket No. 10-3, 6. On January 16, 2010, Plaintiff turned herself into authorities. Docket No. 10-3, 6. Plaintiff's husband put a bond amount of $3,500, and Defendant requested the bond amount in partial satisfaction of Plaintiff's debt. Judge Tott refused Defendants' request. Plaintiff further contends she suffered extreme emotional distress and humiliation due to Defendants' actions.

On February 8, 2010, the Vakulskas Law Firm appeared on behalf of RF Financial to conduct a Judgment Debtor Examination.[2] Docket No. 10-3, 7. Brian Vakulskas, process

---

[2] Defendants contend that the Vakulskas Law Firm appeared on behalf of Neiman, Stone, and McCormick Law Firm, but the Order issued pursuant to the Debtor's Exam, clearly indicates that the plaintiff was RF Financial, not Neiman, Stone, and McCormick Law Firm. Docket No. 10-3, 7 and Docket No. 10-4,

server Vakulskas' husband, owns and operates Vakulskas Law
Firm.   Docket No. 14-1.   Plaintiff contends that process
server Vakulskas works at the Vakulskas Law Firm.   Docket No.
14-1, 4.   However, Defendants contend process server Vakulskas
was not an employee of Vakulskas Law Firm but merely answered
phones without pay when an employee of the Law Firm called in
sick on occasion.   Docket No. 18-1, 5 (citing Docket No. 10-4,
21 and 35).

## II.   MOTION FOR SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if the record shows
"there is no genuine issue as to any material fact and that
the movant is entitled to judgment as a matter of law."   Fed.
R. Civ. P., Rule 56(c).   A fact is material if it is necessary
"to establish the existence of an element essential to [a]
party's case, and on which that party will bear the burden of
proof at trial."   Celotex Corp. v. Catrett, 477 U.S. 317, 322
(1986).   There is a genuine issue as to a material fact if,
based on the record before the court, a "rational trier of
fact" could find for the non-moving party.   Matsushita Elec.

---

34.

Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When considering a motion for summary judgment, a "court must view the evidence in the light most favorable to the nonmoving party . . . ." Hutson v. McDonnell Douglas Corp., 63 F.3d 771 (8th Cir. 1995). This requires a court to draw any reasonable inference from the underlying facts in favor of the nonmoving party and to refrain from weighing the evidence, making credibility determinations, or attempting to discern the truth of any factual issue in a manner which favors the moving party unless there is no reasonable alternative. See Matsushita, 475 U.S. at 587; and Morris v. City of Chillicothe, 512 F.3d 1013, 1018 (8th Cir. 2008) (citing Thomas v. Corwin, 483 F.3d 516, 526-27 (8th Cir. 2007)).

Procedurally, the movant bears the initial burden "of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." Hartnagel v. Norman, 953 F.2d 394, 395 (8th Cir. 1992) (citing Celotex, 477 U.S. at 323). Once the movant has carried his burden, the non-moving party is required "to go beyond the pleadings" and through "affidavits, or by the

6

'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)).

## III.  FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

Congress enacted the FDCPA to . . .

> eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

15 U.S.C. § 1692(e).

In furtherance of these goals, the FDCPA makes it actionable for a debt collector to "use any false, deceptive or misleading representation or means in connection with the collection of any debt," as well as the use of "unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. §§ 1692(e) and 1692(f).

The Plaintiff's FDCPA claims hinge on two contentions: (1) the Defendants failed to properly serve Plaintiff with the Order to Appear for a Judgment Debtor's Examination; and (2) Defendant RF Financial's failure to file notification with the

7

Iowa Attorney General identifying itself as a debt collector violates 15 U.S.C. Section 1692(e)(5).

**A.   Whether Defendants' Failure to Properly Serve Plaintiff with the Order to Appear for the Judgment Debtor's Examination was a Violation of the FDCPA**

As previously discussed, Defendants contend process server Vakulskas served Plaintiff with the Order to Appear for the Judgment Debtor's Examination in a timely manner and in accordance with Iowa law.  Plaintiff contends she was never served and was visiting her son at the hospital at the time she was allegedly served.  Thus, there is a genuine issue as to whether or not Plaintiff was in fact served.  However, Defendants argue they were entitled to rely on process server Vakulskas' affidavit, swearing she had served Plaintiff; and, therefore, whether she did in fact serve Plaintiff, though it may be a genuine issue, is not a material issue because the Iowa Supreme Court "has long accorded return-of-service affidavits presumptive validity."  <u>Gutierrez v. Wal-Mart Stores, Inc.</u>, 638 N.W.2d 702, 705 (Iowa 2002).

Plaintiff responds with five arguments:  (1) process server Vakulskas does not qualify as a valid process server;

8

(2) service of process is a non-delegable duty for which Defendants are liable regardless of whether Defendants relied on process server Vakulskas' affidavit; (3) Defendants have failed to establish that they relied on process server Vakulskas' affidavit in good faith; (4) the FDCPA provides for strict liability; and (5) Defendants may be held vicariously liable for process server Vakulskas' actions.

**1. Whether Mrs. Vakulskas Qualifies as a Valid Process Server**

Under Iowa law, an Order to Appear for a Judgment Debtor's Examination must be "served in the same manner as an original notice in other cases." Iowa Code § 630.12. Original notice "may be served by any person who is neither a party nor the attorney for a party to the action." I.C.A. Rule 1.302(4).

Both parties agree process server Vakulskas is Brian Vakulskas' wife, and Brian Vaskulskas is an attorney for RF Financial. Plaintiff also contends process server Vakulskas is an employee of the Vakulskas Law Firm, which, if true, would, in this Court's opinion, make her ineligible to serve process, and Defendants' reliance on her affidavit of service

unreasonable.  However, the Defendant contends process server Vakulskas, though she has answered phones for the Vakulskas Law Firm on occasion when an employee calls in sick, has never been compensated for her work and is not an employee of the firm.  Furthermore, while it may be prudent for the spouses of attorneys to a party not to serve process on the other party,[3] especially when the other party's liberty interests are implicated, the Iowa Legislature has not so determined, and this Court lacks the authority to do so.  Simply stated, process server Vakulskas is "neither a party nor the attorney for a party to the action," and, as such, she was a person who was eligible to serve Plaintiff the Order to Appear for the Judgment Debtor's Examination.

### 2.  Whether Service of Process is a Delegable Duty

Plaintiff cites <u>General Finance Corporation v. Smith</u>, an Alabama Supreme Court case, for the proposition that a defendant is liable when an independent process server's performance is deficient.  Docket No. 14-2, 11 (citing 505 So. 2d 1045, 1047 (Ala. 1987)).  However, <u>General Finance</u>

---

[3] This Court expresses no opinion as to whether the use of a process server who is also your spouse is an ethical, as opposed to legal, violation.

<u>Corporation</u> considered whether a finance company was responsible for the actions of a third party hired to repossess a plaintiff's vehicle and did not consider issues related to service of process.  505 So. 2d 1045, 1047 (Ala. 1987).  The <u>General Finance Corporation</u> Court noted "that an employer is not ordinarily liable for the tortious acts committed by an independent contractor" unless the employer owed a specific duty to the plaintiff pursuant to contract or law.  <u>Id.</u> at 247.  The statute at issue in <u>General Finance Corp.</u> was Alabama Code § 7-9-503, which provides:

> Unless otherwise agreed a secured party has on default the right to take possession of the collateral.  In taking possession a secured party may proceed without judicial process <u>if this can be done without breach of the peace</u> or may proceed by action.

Alabama Code § 7-9-503 (emphasis added).

Thus, while the statute at issue in <u>General Finance Corp.</u> imposed a specific duty not to breach the peace on the secured party seeking to repossess, Iowa Rule of Civil Procedure 1.302 imposes a very different kind of specific duty - a duty to use a process server who is a sufficiently independent party -

which is in distinct opposition to the type of statutory language that establishes a non-delegable duty.

In addition and as previously noted, the Iowa Supreme Court "has long accorded return-of-service affidavits presumptive validity." Gutierrez v. Wal-Mart Stores, Inc., 638 N.W.2d 702, 705 (Iowa 2002). Return-of-service affidavits "are impeachable only upon clear and convincing proof of falsity." Id. If Court's are entitled to give return-of-service affidavits presumptive validity, it is difficult to understand how a party would have a specific duty to investigate the validity of such an affidavit, and this Court is not familiar, and Plaintiff fails to cite any case law or statute, imposing such a duty.

Finally, Defendant cites an Iowa Supreme Court case for the proposition that a duty is non-delegable "'where one person owes another a contractual duty to act, [and] the law imposes upon the person owing that duty the further duty of acting with due care . . . .'" Docket No. 14-2, 11 (quoting Glarratano v. Weitz Company, 147 N.W.2d 824 (Iowa 1967)). While this is good law, it is inapplicable to this case. Simply stated, any contractual duties the Defendants may have

12

owed to Plaintiff are not at issue here.   Therefore, service of process is a delegable duty, and Defendants cannot be held liable based on a non-delegable duty theory.

### 3. Whether Defendants Relied on Process Server Vakulskas' Affidavit in Good Faith

Plaintiff argues Defendants "knew or should have known . . . service was defective" for three reasons:  (1) Plaintiff notified Defendants she was never served notice at the Debtor's Exam of February 8, 2010; (2) Plaintiff contends process server Vakulskas served 29 people at 22 different residences in five hours on September 27, 2009; and (3) Defendants had Plaintiff arrested without providing her with the opportunity to show cause.   Docket No. 14-2, 10.

As previously noted, Defendants hired process server Vakaluskas prior to the purported service on September 22, 2009.   On January 13, 2010, Defendants filed for a Civil Warrant against Plaintiff due to her failure to appear at the Debtor's Exam of October 26, 2009.   Therefore, Plaintiff's statement that she had not been served notice at the Debtor's Exam on February 8, 2010, does not create a fact issue as to

13

whether or not Defendants relied on process server Vakaluskas' affidavit in good faith.

Though Plaintiff denies Defendants' contention that "neither RF Financial nor its counsel had a reason to doubt the sworn affidavit of service of the process server," Plaintiff failed to provide this Court a persuasive reason for her denial. Docket No. 10-4, 2. Plaintiff's second argument does imply the number of notices process server Vakaluskas claims to have served on September 27, 2009, renders her untrustworthy as a process server. However, this Court is neither aware how many documents a typical process server can serve in a five hour period, nor is there enough information about the circumstances of September 27, 2009, to support a reasonable inference that process server Vakaluskas is inherently untrustworthy. There is also no evidence indicating Defendants had any knowledge of the number of documents process server Vakulskas served on September 27, 2009, or that she was otherwise an untrustworthy process server. Finally, there is nothing in the record to show how many notices process server Vakulskas served on the same day she allegedly served Plaintiff.

14

For their third argument, Plaintiff cites Iowa Code Section 665.7, for the proposition that an "offender must be served personally with an order to show cause against the punishment" before they may be held in contempt.  Apparently, Plaintiff is contending that, because Plaintiff was not served an order showing cause for punishment, Defendant was acting in bad faith.  However, Iowa Code Section 665.7 also provides that an offender may be brought before a Court pursuant to a "warrant, if necessary," which is precisely what happened in this case.

Furthermore, Iowa Code Section 630.11, "Debtor Failing to Appear-Contempt," provides:

> Should the judgment debtor fail to appear after being personally served with notice to that effect . . . the debtor will be guilty of contempt, and may be arrested and imprisoned until the debtor complies with the requirements of the law in this respect.  If any person, party, or witness disobey an order of the court, judge, or referee, duly served, such person, party, or witness may be punished for contempt.

Iowa Code § 630.11.

Again, this is precisely what happened in this case:  an affidavit indicated Plaintiff was personally served with notice of a Judgment Debtor's Exam; Plaintiff failed to appear

15

at the Judgment Debtor's Exam; and the court found Plaintiff guilty of contempt and filed a Civil Warrant for her arrest upon Defendants' application.   As previously noted, the affidavit was entitled to presumptive validity absent clear and convincing proof to the contrary.   If Plaintiff was not, in fact, served, any cause of action she has on this basis, barring any applicable statute of limitations, is against process server Vakaluskas, not Defendants.

**4.   Whether Defendants may be Held Liable Under a Theory of Strict Liability**

The FDCPA imposes strict liability on debt collectors. Picht v. John R. Hawks, Ltd., 236 F.3d 446 (8th Cir. 2001). Strict liability is distinguished from fault based liability in that a party may be held liable though they were not at fault for violating the law in question.   Black's Law Dictionary, 998 (9th ed. 2009).   In other words, liability attaches upon proof that the party in question violated an absolute duty imposed by law.   Id.

Though the FDCPA imposes an absolute duty to employ lawful means to collect debts, and Iowa law imposes a duty on a debt collector to serve the debtor "in the same manner as an

original notice in other cases," this neither requires a debt collector to actually physically serve the debtor nor serve as surety for the actions of a third party process server.  Iowa Code § 630.12.  A debt collector simply has no duty to make sure that a party is actually served but only to follow the requisite procedures related to service of process.  If a debt collector, through an honest mistake involving ignorance of law, did not follow the proper procedure for serving process, then strict liability would apply, but this did not occur here.  Again, notice "may be served by any person who is neither a party nor the attorney for a party to the action," and "return -of-service affidavits" are entitled to "presumptive validity."  I.R.A. Rule 1.302(4); and Gutierrez, 638 N.W.2d at 705.

Strict liability does not transmute a process server's alleged violations of the law into the serving party's alleged violations of the law.  A rule of law that would make attorneys and their clients responsible for the tortious acts of a process server would make those attorneys and those clients de facto process servers; this result would be clearly contrary to the independent nature of process servers required

17

under the law.  Thus, though the FDCPA imposes strict liability upon debt collectors, Defendants in this case did not violate a duty imposed under the FDCPA or Iowa law and, therefore, may not be held liable under a strict liability theory.

**5.  Whether Defendants may be Held Liable Pursuant to a Theory of Vicarious Liability**

There is no evidence in the record that would persuade this Court that process server Vakulskas was an employee of her husband's firm.  She was acting as an independent contractor.

Iowa Courts have consistently employed the Restatement (Second) of Torts for questions involving a defendant's vicarious liability for the actions of an independent contractor.  See Van Fossen v. MidAmerican Energy Co., 777 N.W.2d 689 (Iowa 2009) and Kragel v. Wal-Mart Stores, Inc., 537 N.W.2d 699 (Iowa 1995).  The Restatement (Second) of Torts recognizes the general rule that an "employer of an independent contractor is not liable" for the actions of the independent contractor or his servants.  § 409.  The policy behind the rule "is that, since the employer has no power of

18

control over the manner in which the work is to be done by the contractor, it is to be regarded as the contractor's own enterprise, and [she], rather than the employer, is the proper party to be charged with the responsibility of preventing the risk, and bearing and distributing it." § 409, cmt. b.

Though the Restatement (Second) of Torts recognizes several exceptions to the general rule, Plaintiff does not contend that any of those exceptions apply. However, the Plaintiff does cite Flamm v. Sarner & Associates, P.C., an Eastern District of Pennsylvania case and Pollice v. National Tax Funding, L.P., a Third Circuit case, for the proposition that "an entity which itself meets the definition of 'debt collector' may be held vicariously liable for unlawful collection activities carried out by another on its behalf." Flamm, 2002 WL 31618443, 4 (E.D. Penn. 2002) and National Tax Funding, L.P., 225 F.3d 379, 405 (3rd Cir. 2000). While the Eighth Circuit has not recognized this exception, this Court agrees that the plain language of the FDCPA requires such an exception. However, Defendants did not hire process server Vakulskas to engage in debt collection activities or act as a debt collector. She was hired merely to serve the Plaintiff –

to provide the Plaintiff notice of an Order to Appear - which is common to a variety of actions and is not, properly conceived, a collection activity or the actions of a debt collector.

The Plaintiff also cites the District Court of Massachusetts' decision in Alger v. Ganick, O'Brien & Sarin, for the proposition that a debt collector may be held vicariously liable for the actions of a process server. 35 F. Supp. 2d 148, 153-54 (D.Mass. 1999). The decision of the District Court of Massachussetts are not binding on this Court. Regardless, this Court is persuaded Plaintiff has misread the Alger Court's opinion. The Alger Court held a debt collector violates the FDCPA when they instruct a process server to engage in conduct which is expressly prohibited under the FDCPA. Id. More specifically, Alger involved allegations that the debt collector falsely instructed the process server to make a false representation of the amount of debt owed, in direct violation of Section 1692(e)(2); and the debt collector sought to collect an amount, through the process server, which was not expressly authorized by the agreement creating the debt, in violation of Section

20

1692(f)(1).  Id.  Though the Alger Court discussed the debt
collector's vicarious liability for the actions of the process
server, the discussion of vicarious liability was in the
context of a process server who made false representations as
to the amount of debt owed.  The actions of the debt collector
in Alger, regardless of the actions of the process server,
clearly violated the FDCPA, which "prescribes a 'debt
collector' from engaging 'in any conduct the natural
consequence of which is to harass, oppress, or abuse any
person in connection with the collection of a debt.'"  35 F.
Supp. at 153 (quoting 15 U.S.C. § 1692(d)) (emphasis added).
Furthermore, the process server in Alger was engaging in
activities that went beyond the mere service of process; that
is, the process server was actually engaging in debt
collection activities.   In the case currently under
consideration, there is neither an allegation that Defendants
instructed process server Vakulskas to do anything unlawful,
nor that process server Vakulskas crossed the line into
activities that could be characterized as debt collection.
Given these facts and assuming process server Vakulskas did
not actually serve the Plaintiff, any liability arising from

her failure to serve the Plaintiff lies solely with her, not the named Defendants.

**B.    Defendant RF Financial's Failure to Provide Notification to the Iowa Attorney General[4]**

Iowa Code Section 537.6202(1) requires debt collectors to provide notification to the Iowa Attorney General "within thirty days after commencing business in [the] state . . . ." The debt collector must provide their name, any alternate names they use when conducting business, the address of their principle office, the address of any offices within Iowa, an explanation of how they conduct business in Iowa, the address of a designated agent upon whom service of process may be made in Iowa, and a statement of whether or not they make supervised loans.  Iowa Code § 537.6202.  The purpose of the Iowa notification statute is to alert the Attorney General, consumers, and other debt collectors of the involvement of said person or company in the Iowa debt collection business

---

[4] Plaintiff included this issue only as against RF Financial.

22

and provide a means whereby they can be contacted, subpoenaed or served.

15 U.S.C. § 1692(e)(5) provides that it is unlawful for a debt collector to threaten "to take any action that cannot legally be taken or that is not intended to be taken."  In interpreting Section 1692(e)(5), the Eighth Circuit has indicated that "the FDCPA was not meant to convert every violation of state debt collection law into a federal violation.  Only those collection activities that use 'any false, deceptive, or misleading representation or means,'" are actionable.  Carlson v. First Revenue Assurance, 359 F.3d 1015, 1018 (8th Cir. 2004) (quoting 15 U.S.C. § 1692(e)).

After thoroughly reviewing the relevant case law, this Court is persuaded Defendant's actions taken while collecting Plaintiff's debt were not done in violation of Iowa law.  Iowa Code § 537.6202 merely requires a debt collector to provide notification to the Iowa Attorney General within 30 days after commencing such business.  It neither requires a license to operate as a debt collector within the State, nor does it, if violated, render all subsequent actions of the debt collector unlawful.  Plaintiff contends the difference between

notification and a license "is a distinction without a difference." Docket No. 26, 11. Definitions demonstrate this is not accurate. A license is "permission" to engage in "some act that would otherwise be unlawful." Black's Law Dictionary (9th ed. 2009), license. Registration, on the other hand, can refer either to the "act of recording or enrolling." Black's Law Dictionary (9th ed. 2009), registration. A business's violation of a licensing law necessarily renders each and every action of the business unlawful (unless otherwise specified by law); however, a business's violation of Section 537.6202 (notification within 30 days) is not a prerequisite for them to do business in the state. A violation of 537.6202 merely renders the action or inaction that constitutes the violation in question unlawful, not each and every action undertaken in furtherance of the business.

Plaintiff cites decisions from a District Court of Maryland and a District Court of Rhode Island for the proposition that a collection agency's actions taken without registering or obtaining a license required by state law was a violation of 15 U.S.C. Section 1692(e)(5). Bradshaw v. Hilco Receivables, L.L.C., 765 F. Supp. 2d 719 (D.Md. 2011)

and *Fiorenzano v. LVNV Funding, L.L.C.*, 2012 WL 256415 (D.R.I. 2012).   The <u>Bradshaw</u> Court was dealing with the "Maryland Collection Agency Licensing Act," which "requires that 'a person must have a license whenever the person does business as a collection agency in the State.'" <u>Bradshaw</u>, 765 F. Supp. 2d at 726 (quoting Md. Code § 7-101, et seq.).   The <u>Fiorenzano</u> Court was dealing with the Rhode Island Fair Debt Collection Practices Act, which "unambiguously states that 'no person shall engage within this state in the business of a debt collector . . . without first registering with the director or the director's designee.'" <u>Fiorenzano</u>, 2012 WL 2562415, 4 (quoting R.I. Gen. Laws § 19-14.9-12 (2012)). Despite their holdings, the District Courts of Maryland and Rhode Island recognized that not every "violation of state law, no matter how trivial, constitutes a *per se* violation of the FDCPA." <u>Bradshaw</u>, 765 F. Supp. 2d at 729 and <u>Fiorenzano</u>, 2012 WL 2562415 at 4.   Furthermore, neither the Maryland nor the Rhode Island statute allows a debt collector a 30 day grace period <u>prior</u> to registering as in Iowa Code Section 537.6202.  Finally, Iowa Code Section 537.6202 simply does not require notification to the Attorney General <u>prior</u> to

operating as a debt collector within Iowa, and so the cases cited by Plaintiff are inapplicable.  If the Iowa Legislature had intended compliance with Section 537.6202 to be a prerequisite to operating as a debt collector within the State, they would have done so expressly, as did Maryland and Rhode Island.

This Court is well aware that Plaintiff has cited a number of other cases which hold that where the debt collector had no license, the Court found there was a violation of the Fair Debt Collection Practices Act.  See Russey v. Rankin, 911 F. Supp. 1449 (D. N.M. 1995); Sibley v. Firstcollect, Inc., 913 F. Supp. 469 (M.D. La. 1995); LeBlanc v. Unified CCR Partners, 601 F.3d 1185 (11th Cir. 2010); and St. Denis v. New Horizon Credit, Inc., 2006 WL 1965779 (D. Conn. 2006).  These cases have been carefully considered by the Court.  However, none of them have a "within thirty days after commencing business" clause as does Iowa Code Section 537.6202; and all of them involve state statutes that require licensing or registration prior to operating as a debt collector within the state.

26

Iowa Code Section 537.6117.1 sets out "that the Attorney General or a designee may adopt and repeal rules which the Attorney General deems reasonably necessary for the enforcement of this chapter." The issues before the Court are complex, so this Court requested that the Attorney General send it any such rules. The Court received a copy of the rules, carefully reviewed them, and found that there was no provision in said rules that was pertinent to the pending issue.

The Plaintiff attached to her pleading the case of <u>Chase Bank v. Solberg</u>, which found that a debt collector's notification to the Attorney General is mandatory by use of the word "shall" in Section 537.6202, and that a debt collector cannot pursue a debtor in state court absent compliance with Section 537.6202. Cerro Gordo D. Ct. Small Claims, No. 49326, 2011. However, while the Eighth Circuit's decision in <u>Carlson</u> is binding on this Court, the <u>Solberg</u> Court is an Iowa State District Court sitting in Cerro Gordo County and does not constitute binding precedent for this Court. Furthermore, the <u>Solberg</u> Court was not considering, and in fact could not consider even if presented to them,

whether a violation of Section 537.6202 constitutes a violation of the FDCPA; and, unlike the Plaintiff in Solberg, the Plaintiff in this case does not contend that the Defendant RF Financial's failure to register resulted in her harms, rather she contends it was the nature of the debt procedure itself that resulted in her problems.[5]

This Court does not wish to downplay the seriousness of Defendant's failure to provide the requisite notification to the Iowa Attorney General.   Violations of the Iowa notification requirements should not go unpunished.   Iowa law provides two means for enforcing those violations.   The Iowa Attorney General "may bring a civil action against a person for failure to file notification" pursuant to Iowa Code Section 537.6113, and a debt collector's failure to file notification constitutes a simple misdemeanor pursuant to Iowa Code Section 537.5301.   However, RF Financial's failure to provide notification to the Iowa Attorney General did not

---

[5] The debtor in Solberg contended he was unable to defend himself in small claims court because the debt collector did not have a registered agent within the state upon whom to serve papers or a subpoena.   The Plaintiff here does not allege that Defendant RF Financial's failure to register in any way affected her defense in small claims court.

somehow render all of their actions in relation to Plaintiff illegal or unintended under Iowa law; and, as previously discussed, the steps RF Financial took to collect the Plaintiff's admitted debt, at each juncture, were reviewed and ordered by Judge Tott.

## IV.   IOWA DEBT COLLECTION PRACTICES ACT (IDCPA)

Plaintiff contends Defendants violated the following provisions of the IDCPA:  (1) Section 537.7103(4)(e), which prohibits a "false threat that nonpayment of a debt may result in the arrest of a person or the seizure, garnishment, attachment or sale of property or wages of that person;" (2) Section 537.7103(1)(f), which prohibits "an action or threat to take action prohibited by this chapter or any other law;" (3) Section 537.7103(1)(b), which prohibits a "false accusation or threat to falsely accuse a person of fraud or any other crime;" and (4) Section 537.5108(3), which prohibits "unconscionable conduct" in collecting a debt.  Docket No. 14-2, 15-16.

The Plaintiff's IDCPA (Iowa) claims mirror Plaintiff's FDCPA (Federal) claims.  As with Plaintiff's claims under the FDCPA, Plaintiff's IDCPA claims either hinge on the contention

29

that Plaintiff was never served notice of the Debtor's Exam on October 26, 2009, or that RF Financial failed to provide the requisite notification to the Iowa Attorney General.

As previously noted, Defendants cannot be held liable for process server Vakulskas' alleged failure to serve the Plaintiff.  There is no evidence in the record that gives rise to the reasonable inference that process server Vakulskas was an employee of her husband's firm.  Pursuant to Iowa law, she was acting as an independent contractor; and, absent an exception, she alone is accountable for her actions.

The Plaintiff cites the Iowa Supreme Court's decision in Monahan Loan Service, Inc. v. Janssen for the proposition that violations of the Credit Code may be actionable as unfair debt collection practices.  349 N.W.2d 752 (Iowa 1984).  In as far as violations of the Credit Code affect a debt collector's collection activities in relation to a particularized Plaintiff, this Court agrees.  However, the Monahan Court did not hold that a debt collector's each and every violation of the Credit Code, no matter how tenuously related to the debt collector's collection at issue, is a violation of the FDCPA. Id.

In Monahan, the debt collector failed to bring the action in the county of the debtor's residence as required by Iowa Code Section 537.5113.  349 N.W.2d 752, 754 (Iowa 1984).  The action that constituted the violation of the Credit Code at issue in Monahan was taken against the debtor in order to collect the debt.  As previously noted, RF Financial's failure to provide notification to the Iowa Attorney General pursuant to Section 537.6202(1) simply did not relate to any of the Plaintiff's alleged harms.  In fact, RF Financial's actions taken to collect Plaintiff's legally enforceable debt were all done in compliance with Iowa law.

Again, there is no dispute that Defendant RF Financial violated Section 537.6202 (requiring notification to the Iowa Attorney General).  However, this violation was unrelated to its actions taken to collect the debt from Plaintiff.  As previously noted, unlike state statutes that make registration or licensing a prerequisite to operating as a debt collector within the state, Section 537.6202 provides for a 30 day grace period and fails to state that registration is a prerequisite to engaging in debt collection activities within Iowa.  The prohibited practices outlined in Iowa Code Section 537.7103,

31

including violations of the law, expressly apply only to a debt collector's efforts to "collect or attempt to collect a debt" from a debtor.  Violations of other laws unrelated to the collection of the debt in question do not give rise to a cause of action for the debtor.  What the Plaintiff asks this Court to do is tantamount to determining that a person is liable for damages to another caused in a car accident, without an examination of who was actually at fault, simply because they failed to register the vehicle they were driving. Given Section 537.6202 does not indicate it is a prerequisite to collecting debt in Iowa, it would be unfair to hold Defendant RF Financial liable for all their actions taken against Plaintiff based on a violation thereof.

## V.   ABUSE OF PROCESS

Abuse of process is "'the use of legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it was not designed.'"  <u>Fuller v. Local Union No. 106</u>, 567 N.W.2d 419, 421 (Iowa 1997) (quoting <u>Palmer Tandem Management Servs., Inc.</u>, 505 N.W.2d 813, 817 (Iowa 1993)).  There are three elements to an abuse of process claim:  "(1) the use of a legal process; (2) its use in an

improper or unauthorized manner; and (3) the plaintiff suffered damages as a result of the abuse." <u>Dobratz v. Krier</u>, 2011 WL 5867067, 3 (Iowa App. 2011).

In order for the purpose to be improper, it must be "for an immediate purpose other than that for which it was designed and intended." <u>Wilson v. Hayes</u>, 464 N.W.2d 250, 267 (Iowa 1990). Abuse of process is very hard to prove under Iowa law. In <u>Wilson v. Hayes</u>, the Court stated, "the defendant is not liable if he has done no more than carry the process to its authorized conclusion, even with bad intention." 464 N.W.2d at 267.

Plaintiff contends Defendants used the Judgment Debtor's Exam process in an improper manner because the "arrest for failing to attend the debtor's exam was to obtain the cash bond to satisfy the debt . . ." Docket No. 14-2, 17. Plaintiff also notes that the bond amount, $3,500, was conveniently set at an amount close to the debt owed, which was $3,484.20, plus interest at a rate of 16.8%. Docket No. 14-2, 17. However, under the Judgment Debtor's Exam process, it is a judge, pursuant to Iowa Code Section 630.11, who has the authority to issue a Civil Warrant after a party fails to

33

attend a Judgment Debtor's Exam, and an opposing party is well within their rights to file an application for such a warrant. Furthermore, Judge Tott, not Defendants, set the $3,500 bond amount.   As Defendants note, the application for the warrant did not request a bond amount.

Overall, Defendants employed the debt collection process in the exact manner outlined under the law:  Defendants sought and received a small claims judgment; an execution was returned unsatisfied; Defendants sought and received an Order for a Judgment Debtor's Exam; Defendants hired a sufficiently independent third party to serve process; Plaintiff failed to appear at the Judgment Debtor's exam; based on an affidavit by the process server stating Plaintiff was served, Defendant filed an application for a Civil Warrant; Judge Tott issued the Civil Warrant; and Plaintiff was arrested in conformance with Chapter 630 of the Iowa Code.  Therefore, Plaintiff has failed to present a genuine issue of material fact in relation to her abuse of process claim, and Defendants' motion for summary judgment is hereby granted.

## VI.   CONCLUSION

**The record before this Court is insufficient to establish**

**a genuine issue of material fact sufficient to sustain a trial, and Defendant is entitled to summary judgment as a matter of law.  Therefore, each of Plaintiff's causes of action are hereby dismissed.**

**IT IS SO ORDERED** this 17th day of September, 2012.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa